Good morning, your honors. My name is Ben Coleman. I represent defendant appellant number two, Fidel Villarreal. With me at council table is David Zugman, who represents Raul Villarreal. Our plan is that I was just gonna argue, take all 10 minutes to argue the two issues. It's fine. But Mr. Zugman is here, if there are any specific questions as to his client. I appreciate that, thank you. And I'm gonna start, obviously, with the first issue in the order, which is the number of aliens. And I recognize that it's a long road for an appellant to come up and argue that a district court made an erroneous factual finding. Typically, it's a clear error standard of review. I think we can meet that standard, but I did wanna begin by saying that I think more independent review is applicable here, and that is because in the district court, we argued that the clear and convincing evidence standard of proof applied to this factual question. But oddly enough, it seems to me that our case law is such that when we review for clear error, the question is whether there was clear error in finding by clear and convincing evidence. So it's still clear error, but it folds that in. Well, I believe the cases, and I think we cited Berger, which is one of the cases that say de novo review applies to the standard of proof question. So I wouldn't be prepared to concede that clear error. Tell me why it matters. So as I understand this, and I may be incorrect in one of my understandings, it was stipulated, it was conceded that somewhere between 280 and 400 aliens had been smuggled. Yes, we agree that the government's one of their primary cooperating witnesses, Claudia Gonzalez, testified that she made $400,000 for the entire conspiracy, and she made it at $10,000... Right. So there's lots of evidence that there's between 280, I think, and 400 aliens that were smuggled. Right. The guidelines provision says you go up four levels if more than 100 are smuggled. Well... Yes? I think I know where the... Well, I know... You may know where I'm going, but answer my question. Yes? Well, no. I think it's... You actually go up, I think it's nine levels up to 100. And then after 100, there's a provision that says if there's substantially more aliens, you can upwardly depart. Okay, so... And what did the judge do here? The judge upwardly departed four levels, finding that there was somewhere between 1,000 and 1,500 aliens. Wouldn't he have been able to upwardly depart four levels even if he'd only found 480? No. And that was... Why not? Okay, there's a case called United States versus NAGRA, which we've cited in the brief, and that case says that because of the gradations in section 2L1.1, you generally have to find at least a fourfold increase before you can upwardly depart. Well, that is a fourfold increase. 100 to 400 is fourfold. Okay, well, and we obviously think that it's... Number one, we think factually speaking, it's less than 400. Except that in your brief, you specifically say that it's between 280 and 400. That's in your own brief, that that is a permissible number to find. So I guess I'm wondering the same thing. Judge Graber, you answered the question better than I did, sure. Okay, well, let me say this. First of all, I certainly haven't said that to Fidel Villarreal because our position, which has never been addressed, is that he didn't join the conspiracy until a few months after it started, so you have to back out. That's a different legal question than the number that we're asking about. Right. Okay, let me come at it in a different way. Let's assume for purposes of our question that there was clear and convincing evidence in which the judge could have found 400. Okay. Isn't it irrelevant whether he found more for purposes of this case? No, it's not. Let me explain. Okay. At the first sentencing hearing, the judge did not give this upward departure. He found 600 aliens at that time, and he did not give the upward departure. So if he had only found 400 aliens, there is a very strong likelihood that he would not have upwardly departed because when he found that the conspiracy involved 600, he didn't. Also, even if the court finds 400, he may not have departed upward four levels. Maybe he only would have departed upward one level. The other issue I have is really apart from just the numbers. It seems to me that what motivated the sentencing judge had almost nothing to do with these numbers. It had to do with the nature of the crime and the fact that these folks violated their trust and did exactly the opposite of what they were hired by the people to do, and that the numbers were really a very small part of the picture. What is your response? Because it seems to me that overall, that was what motivated these sentences. Well, I would disagree. I mean, first of all, the four-level upward departure added a decade to the sentencing guidelines. That's number one. That's a substantial increase. It added a decade to the guidelines, but then the judge gave a below deadline sentence. I understand that, but number two, if you look at the 3553 analysis, the judge is very concerned about the scope of the conspiracy. He erroneously, repeatedly is making a big point that he thinks that the defendants, because they're more... He erroneously thinks that there were more loads, that they made more money, and they haven't disclosed the money, and he distinguishes the other corruption cases that we cited because he said these defendants made so much more money than these other cases. If you actually look at the numbers and you look at what Claudia Gonzalez said, they didn't. I mean, the amount of money and the number of aliens that he thought were involved were much greater than what the actual scope of the conspiracy was. So I don't think that this was just a minor, relatively irrelevant part of his sentencing calculus. Certainly, he was concerned about the fact that they abused their trust, that they were agents, that this was corruption, undoubtedly, but there was a major component of his analysis was how grand this conspiracy was, how many aliens were involved... This is a different argument. This is your argument that the sentences were substantively unreasonable. Well, it is, but I'm just responding to the question that this was not a big part of the sentencing... Well, whether it was a big part or not, you're contending it was error. And what my difficulty here is that under the guidelines, if he found 400, then it wouldn't be error. You might say, well, he may have thought there were six, and so he gave us a fourfold increase, but the truth is under the guidelines, a finding of 400 would have allowed this upward departure, would it not? It may have allowed an upward departure. I don't think it would have allowed a four level upward departure. On the surface, why not? It's fourfold. It's fourfold, but typically the increases are at most three levels, not four. I would say that. Aren't there two issues here? The first deals with the upward departure, but suppose there's a second issue, if there's a simple factual error, he thought it was... He makes a finding of 1,000, when let's say there were 480 or 500, and that's wrong. That could affect the substantive reasonableness of the sentence, even if there's a basis for an upward departure. That's what I thought, given the Ninth Circuit precedent. That's what I was just asking. You're really making a substantive reasonableness argument. Absolutely. I mean, this error affected it, and what I think the court in this question before was suggesting is that you could find error, but then find it was harmless on your own, but the appropriate procedure would be to send it back to the district court and say, that's why I'm asking you to divide your argument. It seems to me you have two arguments. One is that there was an error in giving this upward departure. I think that's a tough road for you to hoe. The second argument is because the judge thought there were more aliens than the record showed, his sentence was substantively unreasonable. Absolutely. That's a different argument than the first one, and that's the one I'd like to hear your... And that's... When I was responding to Judge Graber's question before, that's what I was trying to get at, is that one of the major factors in his sentencing calculus was that he believed that the defendants made all... Much more money than they actually did make, that they hadn't disclosed, that there were all these funds out there that they hadn't disclosed, that this case was so much worse than other corruption cases, because it was so much bigger and so much more money involved. Counsel, I'm sorry, go ahead. Could you respond to this, then? Let's assume the guidelines calculation was correct. The judge then gives a substantially below guideline sentence. How does that play into our determination of whether or not the sentence was substantively unreasonable? Well, I think the... Sorry. Okay. And there are two issues. There's procedural unreasonableness and substantive unreasonableness. I think what the court is saying is, if it's an erroneous fact finding, then we have a procedurally erroneous... It's a procedurally unreasonable. No, no, I'm saying let's assume that the judge did the guideline calculation entirely correctly. Right. And then looked at it, as he did here, and said, based on the 3553 factors, I'm gonna depart substantially downward from the... And give a below guideline sentence, very downwards. And so the question is, because he gave a below guideline sentence, what does that do to your argument that the sentence was substantively unreasonable? Well, as to substantive unreasonableness, still, if you have an erroneous factual determination that is tainting the substantive reasonableness, or at least the inquiry as to what the appropriate sentence should be, what is the reasonable sentence under 3553, then the case should be sent back for the judge to reconsider it. Counsel, before you're done, I wanna go back and find out why you think that there's error to begin with, because we have Bernal's testimony that the smuggling involved two to three loads of aliens per week, Gonzalez's testimony that Raul sought to have 10 aliens per group, and Cabrera's sworn statement that there were 50 times or more smuggling operations over the course of a year. And if you multiply two times 10 times 50, you get exactly to where the district court got. So why is that clear error? How do we get to decide, well, he should have listened to this witness a little more and that witness a little less? Because no witness... When you say that Bernal said two times a week or three times a week... Two or three. Right. Bernal never said that they did that every single week. I mean, to say that maybe on two or three occasions they did two or three a week doesn't mean that they did that for 50 weeks. That's just, as we said... It's a permissible inference from the evidence. What you're asking us to do is look at the same evidence and weigh it slightly differently or make different inferences. But how does that square with looking at what the district court did for clear error? Well, number one, I'm asking the court to do it under a clear, convincing standard. I know you are. I know you are. And number two, there's other evidence as well. When you look at the government submitted a declaration from one of their own agents, which said for the last seven months of the conspiracy, they smuggled 11 groups of aliens. So over... That's like a little over one a month. So when you have all this other evidence, you have Gonzalo saying it was 40 groups total, you have Cabrera saying 50 groups total, to then say because one witness said on some unknown number of occasions that it was two or three groups a week, and to say, well, then that's the fact I'm going to find for 50 weeks, that's just an unreasonable determination. At the very least, the district court would have had to have explained, and it never did, why it accredited that particular witness. Where does that rule come from? And when a district court says, well, I've heard the evidence, there is conflicting evidence, and here's what I end up finding. Do we require more than what the district court said here? I think so under Taylor, and we've cited the Taylor case, which talks about when there are clearly erroneous factual determinations. And that case says, when there is conflicting evidence, and there's reasonable evidence supporting one party's position, that the district court has to analyze the evidence, explain why it's choosing one... Well, we know which evidence the district court credited, because we know how the calculations... We just have no explanation as to why. Why he said that that's what I'm choosing as opposed to the other witnesses, and these are government witnesses, they're not our witnesses. Wasn't Gonzalez the most critical witness? Because she was the one who arranged for the aliens in Mexico, so she said that there were four... Based on hers, there were 40. Absolutely, Your Honor. And she also is the one who paid the defendants each time. She was involved in every single one. Bernal, he was only involved in a very small subset of the loads. So he's crediting one government witness who has not nearly the knowledge of the scope of the conspiracy as Ms. Gonzalez does, and she's the critical witness. And again, these are... It's not our witnesses, they're the government's witnesses. Thank you, counsel. You've exceeded your time by a lot, but we'll give you a minute for rebuttal. Thank you. Good morning. May it please the Court. First of all, with respect to the factual finding that there were 1,000 aliens smuggled, this was a conservative estimate supported by the testimony... The probation report says that the United States attorney said that there were 500. Excuse me? I was looking at the pre sentence report, and it quoted the United States attorney as saying there were at least 500. I believe it was paragraph 10. I don't have it. In this case, at sentencing, the government established through the analysis of the witness's testimony that there was... And the court accepted that there was 1,000 aliens smuggled. I know that the court accepted it. Could you... I have one question about the statement of your adversary that there was a long... There was an affidavit that established that there were significant periods of inactivity. It's on page... They make their argument on page 30 of their brief. Yes, Your Honor. Is that an accurate statement? No, it's not, Your Honor. The declaration cited was a declaration submitted in support of the sentencing, and the declaration evaluated the phone contacts between the events where we had a couple events where aliens were actually apprehended. There were other events that were established through poll camera or trackers, and it just simply showed the phone contacts for those 10 select events. It didn't undermine the estimate of the other witnesses regarding the regularity of the smuggling activity. Let's assume that the record only supports a finding of 500, as the US Attorney at least said in the pre sentence report. That's how many... They told the PSR, the probation department, they thought were smuggled. What does that mean in terms of the sentence in this case? The number of aliens, 500 aliens... Let's assume that the judge was well with the record in finding 500, but 1,000 is not supported by the court. Let's assume that for purposes of my question. What does that do to the sentence in this case? That would do two things. Number one, the upper departure based on substantially more than 100 aliens would be supported. Right, because it's more than 400. Yes. So what then that part remains, what does it do to the sentence in this case? We found that that was a factual finding made in error. What should we do? The sentences were otherwise substantively reasonable? No, they may or may not be substantively reasonable, but if they were based on a factual error, suppose that there's a big difference between 500 and 1,000, and suppose the judge was mistaken on finding that there was 1,000, that would be a... He would be making a... He would be giving a sentence that was based on an erroneous fact. Wouldn't... Assuming that is all true, wouldn't the remedy be to remand? Well, the... I mean, after all, he found 600 the first time. He didn't, according to your adversaries here, he didn't even do the upward  process. So if he was factually mistaken, wouldn't the remedy be to remand for resentencing? Well, Your Honor, in due respect that in this case, there was sufficient evidence in the record through multiple witnesses to establish... But you're running away from my hypothetical now. I understand your position that there was plenty of evidence to establish 1,000. Yes, Your Honor. My question is, and let me make it even easier for you, how do we know that if he found 1,000, he gave a different sentence than he would have given had he given 600? Is there any way to know in this record? Based on the validity... We know the upward departure is fine. So the question is, does the number of aliens bear any other relationship to the sentence given? How can we tell that from this record? Based on the record, the number of aliens did not drive the sentences imposed in this case. The sentences... It did drive the upward departure, obviously. It did drive the upward departure, but then the court imposed the sentence below the... Can I ask you to turn to... We don't know why. You have to read the judge's mind. I don't know how many people I've heard. There are all sorts of factors that are in a judge's mind. Sometimes they're not articulated. In fact, I try and follow a policy of the less said, the better. That way they can't get me. That's why we like Judge Korman. In this case, the record is extremely extensive regarding all the factors the court considered. The number of aliens did not factor into the ultimate sentence. That's why I asked opposing counsel. It seemed to me that the judge was intensely focused on the abuse of trust and the abuse of the position as border patrol agents, and also on the violent threats against a witness and efforts to obstruct justice. And it seems to me pretty clear, because this judge did say something, more than nothing, about what was motivating the sentence. And anyway, as I read the transcript, that's really what was in the judge's mind foremost. That's correct. Can we ask you about what the judge actually did say? No, I did have, actually, one other question, and that is, there was some allusion earlier to whether the look at reasonableness supplants the sort of upward and downward departures. And there is some case law, like Vazquez-Cruz, that suggests that the reasonableness inquiry sort of trumps the discussion of how the upward departure and downward departure was done. So do you agree that where we the sentences? That's correct, Your Honor. I do agree with that. In this case, where you have agents, experienced agents, who created their own organization, smuggled aliens on a regular basis, received bribes on a regular basis down in Mexico, and then multiple times a week transported the aliens in the border patrol vehicles. He could have given, as I read the pre-sentence report correctly, he could have given as much as 240 months, which is 20 years, just based on what the guidelines say, which is a substantial sentence. And my other, I'm just saying that, my other problem is, is why bother if you, if it doesn't matter, and this is based on my own experience, if it's not going to matter to me an imposing sentence, I don't get involved in whether I should increase the, you know, do what he did, let's say, with respect to the amount of aliens. If it's not going to affect my sentence, why even engage in it? Why not just accept the guideline calculation? The fact that he's engaging in this, I mean, it just doesn't, it just, for us, for an appellate court to decide what, everything that may have been in a judge's mind, involves a degree of speculation that makes me feel uncomfortable based on my own experience as a sentencing judge. I appreciate the court's concerns. I think on the record before this court, the record's very elaborate with respect to all the aggravating factors, the 3553 analysis. This was an aggravating case. I'm not suggesting that, that they deserve, you know, to walk. But I don't want to get into that argument with you now when I'm at sentencing. What I want to be sure about is what the, Claudia Gonzalez, it seems to me, was the critical person in Mexico who was, who was getting the testimony. And based on her testimony, essentially, there were 40 trips. I mean, she testified that they made $800,000, that they split, I think, I may be getting the math wrong, but they split, they made $400,000 apiece and it was $10,000 a trip. She, I believe she testified that she received $400,000 and then she also testified that she paid the brothers about $400,000. She wasn't the only one paying the brothers. Armando Garcia also paid bribes to the brothers and her estimate on the amount of money that the brothers received is not the complete picture because the brothers received bribe payments even if she didn't receive anything. So they received a guaranteed bribe payment if they were involved and also that there was someone else paying them bribes. I know your time is short, but I want you to address this. You've been talking to Judge Cormitt about what the judge may have said or may not have said, but one thing he did say concerns me and I'm going to quote. In this case, the defendants have remained mum as to the allocation, the identification, and the location of Elgaten gains. They are constitutionally entitled to remain mum. How do we know that that statement didn't affect his sentence? In this case, the court held a separate hearing April 11, 2016 and excised and extracted those statements and found that just based on the evidence in the case that the court found by clear and convincing evidence that there was about a million dollars in bribes that the that the the fine the imposition of a fine was appropriate and defendants bore the burden with respect to establishing that no fine was appropriate. Well, I'm not sure this was directed solely to the fine. It was when the other side was saying here's a bunch of other cases in which people have gotten lesser sentences and he said yeah but then the judge says the difference in those cases of course is that people didn't exercise their constitutional right to remain silent. So I'm worried that that may have somehow entered into a sentencing calculus. Tell me how I can be sure it didn't. Well, the court indicated that that statement was primarily to distinguish the cases. The cases cited by defense where defendants are given a break at sentencing because they pled guilty early and cooperated. He was distinguishing between cooperators who plead guilty and those who go to trial and obstruct justice. So he was doing the comparative analysis with respect to unwarranted sentencing disparities and he clarified that on the record. Yeah, where does the 50 weeks come from that they were doing this 50 weeks? The 50 weeks comes from the time where both brothers were involved. The entire period of smuggling was 13 to 14 months. But how do we know that that's the that's the the scope of the conspiracy lasted for until they were arrested but how do we know that the I'm getting back to the number. How do we know that this happened that they were doing this every week? Well, we know that based on the testimony excuse me for 50 week number. We know that based on the testimony that they were doing it according to Claudia three to four times a week there was no indication of significant breaks. We also there was also had a statement that there were 50 occasions in the course of a year. That's correct. In the 50 week period there was also testimony at trial that Fidel was involved in a smuggling event on June 9th 2005. So Fidel was involved for over a year. Both brothers the 50 week period is when both brothers were smuggled. I have one last question. It seems to me and I don't have enough of a feel for it that this was being investigated and that the people the investigators knew that this was going on before they actually made the arrest. And if they knew this was going on for two or three times a week for 50 weeks and they didn't stop it sooner? That to answer your question your honor the government did not know the extent in the regularity of the smuggling activity until everyone was arrested and then we debrief the defendants who were involved. So you didn't know that it was going on two or three times a week? No your honor. When when when did you first discover their role in picking up the aliens after they were they were crossing the border? In other words their role was to pick up the aliens and deliver them to Los Angeles or wherever they delivered them. When did you first discover that? We first discovered in May and June of 2005 that this activity was going on. The different locations for the drop-off so it was a moving target throughout the investigation and the government was analyzing the phones conducting surveillance including air surveillance on a regular basis and we were not successful in developing the investigation at the very early stage to put a stop to it. Thank you counsel the time has gone over as well but you may have a brief time for rebuttal. How to address a few of Judge Corman's questions on the numbers. The document that we cited the declaration from the government agents at page 184 of the excerpts it's a detailed listing of the dates during the seven month period they have about 10 or 11 dates. The agents had GPS tracking, poll cameras, they were doing visual surveillance, they knew exactly what was going on and to think that they were allowing this to happen two or three times a week for a year and they just continued to let it happen it just it strains credulity and when you have the government's witnesses the most important one this is Claudia Gonzales saying about 40 times Hector Cabrera maybe ups it to 50 times during the year period and I agree it was a 50 week period they're right about that but this two to three times a week just is is drawn out a whole cloth that they did it two to three times a week every single week. They had mentioned that Armando Garcia had also paid the defendants so that Claudia Gonzales wasn't the only one. Armando Garcia was Claudia Gonzales's husband. They were together and there might have been a couple of occasions where Claudia didn't make the payment she gave the money to Armando to make the payment but it's the same thing and I also wanted to emphasize in their briefs the government never argued harmless error if we were to write about the factual error they never said that that error was harmless and the same thing with the Fifth Amendment error in their briefs they never argued harmless error and they've waived that finally on the Fifth Amendment issue as far as harmlessness all the judge said is to the extent that I may have infringed on the defendants rights I retract those statements and under this court's case law such a summary statement like that is not sufficient to save to avoid reversal I mean the district court if it wanted to avoid reversal at least would have had to have engaged in an extended analysis where it explained that the reasons why this case were different from the other cases had nothing to do with them remaining mom I went through all the cases you cited again explained himself all he said was to the extent that I violated the Fifth Amendment I retract those statements that doesn't avoid that's not avoiding or making a showing of harmlessness beyond a reasonable doubt thank you counsel the case just argued is submitted and we very much appreciate the arguments from both
judges: Graber, Hurwitz, Korman